UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMES DAMON | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | 1:08-cr-00157-JAW-3 |
| | ) | 1:11-cv-00058-JAW |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

The Court denies James Damon's 28 U.S.C. § 2255 petition (1) because he is procedurally defaulted from asserting the claim, (2) because the United States Supreme Court case of *Johnson v. United States*, 130 S. Ct. 1265 (2010) and the First Circuit case of *United States v. Holloway*, 630 F.3d 252 (1st Cir. 2011) are not retroactive, (3) because his claim of legal as opposed to factual innocence is not cognizable in a § 2255 petition, (4) because a miscalculation of a guideline sentence range that results in a sentence within the correct statutory range is not a complete miscarriage of justice, and (5) because a sentence of seventy months for this Defendant does not represent in any event a complete miscarriage of justice. The Court affirms the Magistrate Judge's Recommended Decision. However, because a reasonable jurist could disagree with this ruling, the Court grants Mr. Damon's request for a certificate of appealability.

# I. PROCEDURAL HISTORY

## A. The Facts

On October 11, 2007, James Damon approached Katrina Wickett and asked her to purchase a gun for him at Frati's Pawn Shop in Bangor, Maine. *Prosecution Version* at 1. (ECF No. 79). Convicted in Massachusetts of an assault and battery felony in 2006, Mr. Damon could not buy the gun on his own. *See id.* Instead, Mr. Damon gave Ms. Wickett money to buy the gun, entered Frati's with her and with two of his male associates, and hand-selected a Springfield Armory .45 caliber pistol for her to purchase. *United States v. Damon,* 595 F.3d 395, 398 (1st Cir 2010); *Prosecution Version* at 1. Video surveillance from the pawnshop showed Mr. Damon handling at least three guns, including the Springfield Armory .45 caliber pistol. *Damon*, 595 F.3d at 398. Ms. Wickett filled out the requisite paperwork and purchased the gun for him. *Id.*; *Prosecution Version* at 1.

After the sale, the pawnbroker became suspicious of the transaction and asked Ms. Wickett to return in forty-five minutes so that he could resolve a paperwork issue. *Damon*, 595 F.3d at 398. The pawnbroker contacted a Task Force officer at the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives who came to the Pawn Shop to conduct surveillance. *Id.* When Ms. Wickett returned, the pawnbroker handed her the guns, which prompted a discussion between the Task Force officer and Ms. Wickett. *Id.* Shortly thereafter, Ms. Wickett turned the guns over to the officer and explained how Mr. Damon and his two associates arranged for her to buy the guns for them. *Id.* On August 13, 2008, a federal grand jury

charged Mr. Damon with three firearms offenses and he was arrested on August 15, 2008. *Id; Indictment* (ECF No. 3).

The five-count Indictment against Mr. Damon contained three counts: Count One—conspiracy to make false statements in acquisition of firearms in violation of 18 U.S.C. § 371 and § 922(a)(6); Count Two—aiding and abetting the making of false statements in the acquisition of firearms in violation of 18 U.S.C. § 922(a)(6); and Count Five—possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). *Indictment.* On December 1, 2008, Mr. Damon pleaded guilty to Count 5 pursuant to a written plea agreement, and at his sentencing, pursuant to that agreement, the Government moved to dismiss Counts One and Two. *Plea Agreement* at 4 (ECF No. 67). The Court granted the motion. *J.* (ECF No. 207).

## B. Mr. Damon's Sentencing

In the Presentence Report (PSR), the Probation Office addressed Mr. Damon's criminal history. *PSR* at 7-13. The Probation Office calculated his criminal history score at nine and determined that he fell into Criminal History Category IV. *Id.* ¶ 33. Included in this calculation was a January 12, 2006 conviction in the Massachusetts District Court for assault and battery. *Id.* ¶ 30. In determining Mr. Damon's base offense level under the Guidelines, the Probation Office referenced both this assault and battery conviction and a drug trafficking conviction and determined that Mr. Damon's base offense level was twenty-four because he had at least two felony convictions of either a crime of violence or a controlled substance offense. *Id.* ¶ 12; *see* U.S.S.G. § 2K2.1(a)(2) ("**24**, if the

defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense").

On April 3, 2009, Mr. Damon filed a sentencing memorandum in which he opposed two sentencing enhancements that the Probation Office had recommended in the PSR: (1) a two-level increase for the number of firearms attributable to him under U.S.S.G. § 2K2.1(b)(1), and (2) the inclusion of a drug trafficking offense as one of the predicate offenses for the base offense level of twenty-four. *Def.'s Mem. in Aid of Sentencing* at 1-9 (ECF No. 171). Mr. Damon did not contest the inclusion of the assault and battery conviction as a crime of violence under § 2K2.1(a)(2). *See id.; Mem. in Support of 2255 Pet.* at 3 (ECF No. 300) ("Mr. Damon did not challenge the use of his prior Assault and Battery conviction as a qualifying prior crime of violence in establishing the base offense level") (*Def.'s Mem.*). The Government maintained that both enhancements were warranted and recommended a sentence at the higher end of the Guidelines range of seventy to eighty-seven months. *Gov't's Mem. in Aid of Sentencing* at 1-5, 7-9 (ECF No. 174). In calculating Mr. Damon's final offense level, the PSR started with a base offense level of twenty-four, added two levels for the number of firearms, and reduced that number by three levels for acceptance of responsibility to a final offense level of twenty-three. *PSR* ¶ 12-21. On May 12, 2009, after rejecting Mr. Damon's two sentencing objections, the Court sentenced Mr. Damon to seventy months imprisonment on Count Five, three years of supervised release, and a special assessment of $100. *J.* (ECF No. 207). On May

13, 2009, Mr. Damon appealed his sentence to the First Circuit Court of Appeals. *Notice of Appeal* (ECF No. 208).  On appeal, Mr. Damon did not raise any issues regarding the assault and battery conviction and on February 18, 2010, the First Circuit affirmed the sentence.  *See Damon*, 595 F.3d at 397; *J. on Appeal* (ECF No. 251).

### C.    Mr. Damon's Motion to Vacate, Set Aside, or Correct his Sentence

#### 1.    Mr. Damon's Motion

On February 14, 2011, Mr. Damon moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  *Mot. under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (ECF No. 289) (*Def.'s Mot.*).  On March 15, 2011, Mr. Damon filed a memorandum in support of his petition, *Def.'s Mem.*, and on August 22, 2011 a supplemental memorandum.  *Supp. Mem. in Support of 2255 Pet.* (ECF No. 322) (*Def.'s Supp. Mem.*).  Mr. Damon contends that *United States v. Holloway*, 630 F.3d 252 (1st Cir. 2011), a case that followed the United States Supreme Court's decision in *Johnson v. United States*, 130 S. Ct. 1265 (2010), requires a recalculation of his base offense level.  *Def.'s Mem.* at 5-10.  He contends that under *Holloway* an assault and battery conviction under this Massachusetts statute for an offensive and reckless battery is categorically not a crime of violence, as opposed to harmful battery, which is.  *Def.'s Mem.* at 5-10. He says that the Government can establish only the fact of the assault and battery conviction, but not the level of intent involved and therefore, under *Holloway* his 2006 assault and battery conviction should not have counted as a crime of violence.

*Id.* at 4-5. Mr. Damon maintains that his base offense level should have started at twenty, not twenty-four. *Id.* at 4-5. He contends that with a two-level increase for the number of firearms and a three-level decrease for acceptance of responsibility, the total offense level should have been nineteen and the resulting sentencing guideline range should have been forty-six to fifty-seven months, not seventy to eighty-seven months. *Id.*

In support of his motion, Mr. Damon insists that under *Teague v. Lane*, 489 U.S. 288 (1989), the rule announced in *Holloway* is substantive rather than procedural and should be applied retroactively. *Id.* at 5-6. Mr. Damon supports his retroactivity argument with *United States v. Narvaez*, 674 F.3d 621 (7th Cir. 2011),[1] in which the Seventh Circuit Court of Appeals concluded that the United States Supreme Court's decisions in *Begay v. United States*, 553 U.S. 137 (2008) and *Chambers v. United States*, 555 U.S. 122 (2009) were retroactive. *Def.'s Supp. Mem.* at 1-2.

Mr. Damon recognizes that "'sentencing errors are generally not cognizable on collateral review'" but argues that his case, and cases such as *Naravez,* present "'a special and very narrow exception: [a] post-conviction change in the law has rendered the sentencing court's decision unlawful.'" *Id.* at 2 (quoting *Narvaez*, 674 F.3d at 627). Under *Holloway*, Mr. Damon states "the First Circuit has shifted [him] from one category of violent offender to another category of non-violent offender based on the same document [(his Massachusetts' criminal complaint)]"

---

[1] The Seventh Circuit original opinion in *Narvaez*, 641 F.3d 877 (7th Cir. 2011) was withdrawn and replaced by the opinion found at 674 F.3d 621 (7th Cir. 2011). The Court has cited the later version.

and therefore he is no longer subject to the enhancement and should be resentenced for the "understandable, but mistaken, impression that [he] had two countable prior convictions." *Def.'s Mem*. at 7; *Def.'s Supp. Mem*. at 4. Furthermore, Mr. Damon asserts that he did not default on this claim because it was unavailable to him at the time of his sentencing and appeal. *Def.'s Mem*. at 8. He says, that "it appears that [he] is [now] 'actually innocent' of the sentence imposed and thus may be excused for not having raised this issue in his direct appeal." *Id*. at 10.

### 2. The Government's Motion for Summary Dismissal

In response to Mr. Damon's motion, on September 20, 2011, the Government moved the Court for summary dismissal of Mr. Damon's § 2255 motion. *Gov't Mot. for Summ. Dismissal of Mot. to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 and Supporting Mem. of Law* (ECF No. 327) (*Gov't's Mot.*). The Government first argues that there is little, if any, authority to support Mr. Damon's contention that *Holloway* and *Johnson* should be applied retroactively. *Id*. at 20. In addition, the Government highlights a series of decisions from various federal courts to emphasize that courts are divided on retroactive application of new precedent in § 2255 petitions. *Id*. at 21-22.

Second, the Government contends that Mr. Damon's claim is procedurally barred because he did not challenge the inclusion of the assault and battery conviction in his PSR, at the time of his sentencing, or on appeal. *Id*. at 22. Although *Holloway* and *Johnson* were decided after Mr. Damon's sentencing and appeal, the Government points out that his current claim was reasonably available

to him at the time of his sentencing and appeal given significant legal revisions to the term "violent felony" at that time. *Id.* at 23. Third, the Government argues that even if *Holloway* is retroactively applied and his claim is not procedurally barred, Mr. Damon cannot demonstrate that upholding his seventy-month sentence would result in a miscarriage of justice, a statutorily illegal sentence, or constitutional violation. *Id.* at 24-25. Finally, in the event of a resentencing, the Government alerts the Court that it will seek an upward departure or variance from any reduced Guideline range. *Id.* at 25.

### 3.    Mr. Damon's Reply

On October 20, 2011, Mr. Damon replied. *Petitioner's Opp'n to Gov't Mot. for Summ. Dismissal* (ECF No. 331) (*Def.'s Reply*). First, Mr. Damon asserts that the Government failed to demonstrate that *Johnson* and *Holloway* may not be applied retroactively to his case given that Mr. Damon is not limited by a waiver, that his § 2255 petition was timely, and that *Johnson* and *Holloway* fit within a class of cases generally given retroactive effect. *Id.* at 1-3. Next, Mr. Damon admits that he procedurally defaulted on his claim but argues that there are exceptions to the procedural default rule, which allow the Court to provide him a remedy. *Id.* at 4. Citing the Seventh Circuit's decision in *Narvaez*, Mr. Damon also argues that the "miscarriage of justice" exception applies to his case because the Court misapprehended the nature of his criminal history, which could result in a due process violation if not corrected. *Id.* at 6.

## II.    THE MAGISTRATE JUDGE'S RECOMMENDED DECISION

### A.    The Recommended Decision

The United States Magistrate Judge filed a Recommended Decision on November 21, 2011.  *Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 332) (*Rec. Dec.*).   The Magistrate Judge recommended that the Court grant the Government's motion for summary dismissal of Mr. Damon's 28 U.S.C. § 2255 motion, unless it concluded that a "miscarriage of justice" had occurred.  *Id.* at 14. After summarizing the inter-circuit disagreement regarding the retroactivity of new precedent on collateral review, the Magistrate Judge tentatively recommended that *Johnson* and *Holloway* "could theoretically be applied retroactively to a non-time barred, first-time § 2255 petition and that even a procedurally defaulted defendant can, in the right circumstances, mount a challenge of 'actual innocence' to a sentencing enhancement in the context of a § 2255 petition."  *Id.* at 12.  Even so, she recommended that Mr. Damon not prevail on his § 2255 petition because he did not show that the sentencing error in his case was either statutorily illegal or unconstitutional.  *Id.*

The Magistrate Judge distinguished *Narvaez* on the ground that Mr. Damon is not challenging a mandatory sentencing enhancement "but rather a two-year difference between the high-end of the base-offense level 20 and the low-end of base-offense level 24."  *Id.* at 13.  Notably, the Magistrate Judge pointed out that whether this sentencing difference constitutes a "miscarriage of justice" must be analyzed in light of the Court's discretion to impose the same sentence at

resentencing if it accepts the Government's argument for an upward departure or variance under the current sentencing guidelines. *Id.* Although the Magistrate Judge acknowledged that "given the current state of the law, a reasonable jurist could conclude that Damon's procedural default of the *Holloway* issue could be excused in these circumstances and his 'actual innocence' regarding the sentence enhancement could form the basis of a resentencing order," she determined that no caselaw confirms this position. *Id.* at 14. In the end, she concluded that "[Mr.] Damon's case does not present the factual matrix that would warrant this Court's entry of such an order" unless his sentence was based upon assumptions concerning his criminal history which were materially untrue in the sense of *Townsend v. Burke*, 334 U.S. 736 (1948), such that his sentence amounted to a "miscarriage of justice." *Id.*

### B. Mr. Damon's Objection

On December 8, 2011, Mr. Damon objected to the Magistrate Judge's Recommended Decision. *Objs. to Recommended Decision* (ECF No. 333) (*Def.'s Objs.*). Mr. Damon insists that his guideline calculation was "erroneously calculated" and that, if properly calculated, his sentencing range would have been forty-six to fifty-seven months, not seventy to eighty-seven months. *Id.* at 5. Mr. Damon argues that the method by which his sentence was calculated establishes that his "'sentence was imposed in violation of the Constitution or laws of the United States . . . .'" *Id.* (quoting 28 U.S.C. § 2255(a)). Recognizing that circuit courts have come to different conclusions at to whether a Guideline error is

cognizable in a § 2255 proceeding, Mr. Damon asserts that although the First Circuit has not directly addressed this issue "it appears from the cases decided in the First Circuit that it would join the Seventh Circuit's analysis in *Narvaez*." *Id.* at 6. Finally, citing *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Curran*, 926 F.2d 59 (1st Cir. 1991), Mr. Damon asserts that he was sentenced upon information that was "materially incorrect" in light of *Holloway* and that this error implicates substantive due process. *Id.*

## III. DISCUSSION

### A. *United States v. Turner*

On June 28, 2011, a district court in the District of Massachusetts issued a decision that touched on the impact of *Johnson* on Massachusetts convictions for assault and battery for purposes of Armed Career Criminal status. *United States v. Turner*, 793 F. Supp. 2d 495, 508-11 (D. Mass. 2011). The defendant appealed that order to the Court of Appeals for the First Circuit and, as it appeared that the First Circuit might address *Johnson*'s retroactivity, this Court waited for the First Circuit's *Turner* decision before addressing Mr. Damon's objection to the Recommended Decision.

On November 13, 2012, the First Circuit issued *Turner*. *Turner v. United States*, Nos. 11-1884, 11-1885, 2012 U.S. App. LEXIS 23319 (1st Cir. Nov. 13, 2012). As it turned out, the First Circuit ruled without reaching the retroactivity issue. The *Turner* Court carefully reviewed the defendant's arguments and concluded that, when he was before the district court, the defendant had failed to "raise this

independent *Johnson* theory and the claim is forfeited." *Id.* at *20. In closing, the Circuit Court commented:

> Although we have no occasion to decide the *Johnson* issue, it may be useful to emphasize that the analysis of such a clam is by no means straightforward. The Supreme Court has not yet held that *Johnson* is retroactive and the government has independently argued that the claim is procedurally defaulted. This is not a case in which the application of time limits threatens any obvious injustice.

*Id.* at *23-24.

## B. *United States v. Narvaez* and Other Caselaw

On June 3, 2011, the Court of Appeals for the Seventh Circuit issued a decision that addressed an analogous issue: whether two United States Supreme Court decisions, *Begay v. United States*, 553 U.S. 137 (2008) and *Chambers v. United States*, 555 U.S. 122 (2009), which redefined "violent felony" for purposes of the Armed Career Criminal Act (ACCA), should be applied retroactively on collateral review. *Narvaez*, 674 F.3d at 625. The Seventh Circuit discussed the Supreme Court's rules on retroactivity under *Teague v. Lane*, 489 U.S. 288 (1989) and noting that retroactivity depended upon whether a new rule is procedural or substantive, the *Narvaez* Court observed that the new rule substantially narrowed a defendant's exposure to a sentence of imprisonment and that such an increase in punishment "'is certainly a substantive liability.'"[2] *Id.* at 626 (quoting *Welch v. United States*, 604 F.3d 408 (7th Cir. 2010)). The Seventh Circuit held that "the *Begay* and *Chambers* decisions apply retroactively on collateral review." *Id.* at 625.

---

[2] In *Teague*, the Supreme Court also observed that a "watershed" change in a rule of criminal procedure could have retroactive effect. *Teague*, 489 U.S. at 311; *see Whorton v. Bockting*, 549 U.S. 406, 416 (2007). However, Mr. Damon does not claim that if *Johnson* announced a procedural, not a substantive rule, that it should be considered a watershed rule. *See Def.'s Mem.* at 5-6.

In *United States v. Coley*, the Eleventh Circuit reached a different conclusion. *United States v. Coley*, 336 F. Appx. 933 (11th Cir. 2009). The *Coley* Court noted that in *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court wrote that "'28 U.S.C. § 2255 will not be allowed to do service for an appeal . . . . For this reason, nonconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings.'" *Coley*, 336 F. Appx. at 935 (quoting *Stone*, 428 U.S. at 478 n.10). The *Coley* Court did not view *Begay* as addressing a constitutional issue, only an interpretation of the application of a Sentencing Guideline provision. *Id.* at 936. Furthermore, the Eleventh Circuit observed that if the defendant believed his career offender status was improper under the guidelines "that claim could have been made on direct appeal—just as Begay and Archer later did."[3] *Id.* The *Coley* Court affirmed the denial of the § 2255 petition "[b]ecause his status as a career offender is a non-constitutional issue that Coley could have raised on direct appeal" and therefore "it is not cognizable on collateral review under § 2255." *Id.*

Other than *Narvaez* and *Coley*, there is limited caselaw as to whether *Begay* and *Chambers* should be applied retroactively. In July 2012, the Sixth Circuit addressed a defendant who had received an enhanced sentence under the ACCA that he could not have statutorily received for his original crime. *Kirk v. United States*, No. 11-3337, 2012 U.S. App. LEXIS 15822, at *2 (6th Cir. Jul. 27, 2012) (addressing defendant sentenced to 190 months under the ACCA and the

---

[3]     In referring to Archer, the Eleventh Circuit was alluding to an Eleventh Circuit case applying *Begay. See United States v. Archer*, 531 F.3d 1347 (11th Cir. 2008).

unenhanced statutory maximum was 120 months). In *Kirk*, the Government conceded on appeal that the defendant had only two qualifying ACCA predicates and urged the appellate court to remand the case for the imposition of a non-enhanced sentence. *Id.* The Sixth Circuit had little difficulty concluding that the erroneous classification represented a miscarriage of justice and that relief under 28 U.S.C. § 2255 was appropriate, effectively applying *Begay* retroactively. *See id.*

## C.    Caselaw After *Johnson*

As the First Circuit pointed out in *Turner*, the Supreme Court "has not yet held that *Johnson* is retroactive." *Turner*, 2012 U.S. App. LEXIS 23319, at *23-24. Whether *Johnson* is retroactive is more complicated than whether *Begay* and *Chambers* are retroactive—in part because *Begay* and *Chambers* were decided before *Johnson*, it is more difficult to argue that *Johnson* announced new law.

Although not cited by the parties, the Court has located two circuit cases in which the Government conceded that *Johnson* is retroactive. In *Rozier v. United States*, No. 11-13557, 2012 U.S. App. LEXIS 24129 (11th Cir. Nov. 21, 2012), the Circuit wrote that "[t]he government concedes, and we take it as a given, that the Supreme Court's *Johnson* decision is retroactively applicable." *Id.* at *8. In *Meirovitz v. United States*, 688 F.3d 369 (8th Cir. 2012), Judge Bright noted in concurrence that "the government concedes that *Johnson* states a new rule with retroactive effect." *Id.* at 372.

The Government cites the opinions of several district courts that have ruled *Johnson* is not retroactive. In *Crawford v. United States*, Nos. 8:11-cv-1866-T-

30TGW, 8:07-cr-454-T-30TGW, 2011 U.S. Dist. LEXIS 94291 (M.D. Fl. Aug. 23, 2011), a district court concluded that the contention that *Johnson* is retroactive "lacks merit." *Id.* at *5. Judge Moody noted that "*Johnson* includes no statement from the Supreme Court that the decision applies retroactively to cases on collateral review" and he noted that "[n]o binding Eleventh Circuit decision requires retroactive application of *Johnson* to Petitioner's section 2255 motion." *Id.* Although helpful, the Court notes that the district court in *Crawford* was addressing whether the petitioner's motion was timely under 28 U.S.C. § 2255(f)(3), which provides that the one-year period of limitation applies from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* at *4 (quoting 28 U.S.C. § 2255(f)). The *Crawford* Court directed its analysis to whether the petitioner had met this difficult statutory hurdle, and here, Mr. Damon filed his § 2255 petition while his direct appeal was still pending so § 2255(f)(3) does not apply. Other district courts have split on the issue of retroactivity. *Compare Brackett v. United States*, Nos. 3:11-cv-30, 3:08-cr-56-2, 2012 U.S. Dist. LEXIS 78883, at *21-22 (N.D. W.Va. Apr. 16, 2012) (concluding that *Johnson* did not announce new law and was not retroactive), *with Reese v. Haynes*, No. CV211-001, 2011 U.S. Dist. LEXIS 93996, at *7 n.3 (S.D. Ga. Jun. 27, 2011) (concluding that *Johnson* is retroactive).

### D. New or Old Law and Procedural Default

Mr. Damon concedes that because he failed to advance the pending issue on direct appeal, he is subject to procedural default. *Def.'s Reply* at 4 ("He does not dispute that he procedurally defaulted this claim. He also maintains that there are exceptions to the procedural default rule that would allow this Court to provide him a remedy"). The Supreme Court has explained that the procedural default rule "is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003). To avoid procedural default, Mr. Damon must demonstrate either cause for the waiver and actual prejudice, *Reed v. Farley*, 512 U.S. 339, 354 (1994), or a constitutional violation that has probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

"When a decision of [the Supreme] Court results in a 'new rule,' that rule applies to all criminal cases still pending under direct review." *Schiro v. Summerlin*, 542 U.S. 348, 351 (2004). "As to convictions that are already final, however, the rule applies only in limited circumstances." *Id.* "New *substantive* rules generally apply retroactively. . . . New rules of procedure, on the other hand, generally do not apply retroactively." *Id.* at 351-52 (emphasis in original). In the context of a § 2255 petition, "new" means something specific. In *Bousley v. United States*, 523 U.S. 614 (1998), the Supreme Court required that to be new a claim

must be "'so novel that its legal basis is not reasonably available to counsel.'" *Id.* at 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)).

Applying this definition, the Court concludes that *Johnson* does not fit in the "new" category. The Court sentenced Mr. Damon on May 9, 2009. It is true that the Supreme Court decided *Johnson* on March 2, 2010 after Mr. Damon's sentencing and appeal were final and at that time the controlling precedent in the First Circuit was that a conviction for assault and battery under Massachusetts law was a predicate conviction for a crime of violence under the United States Sentencing Guidelines. *See United States v. Estevez*, 419 F.3d 77, 82 (1st Cir. 2005); *United States v. Santos*, 363 F.3d 19, 22 (1st Cir. 2004); *Untied States v. Mangos*, 134 F.3d 460, 464 (1st Cir. 1998). However, in *Johnson*, the Supreme Court applied the same modified categorical analytic approach it announced in *Taylor v. United States*, 495 U.S. 575 (1990) and reiterated in *Shepard v. United States*, 544 U.S. 13 (2005), an approach that by 2009 was fully integrated into the law. *Johnson*, 130 S. Ct. at 1273. In fact, in *United States v. Giggey*, 551 F.3d 27 (1st Cir. 2008), before Mr. Damon was sentenced, the First Circuit issued an en banc decision in which it applied the modified categorical analysis in *Taylor*, *Shepard*, and *Begay* to whether a Massachusetts conviction for burglary constituted a crime of violence under the career offender provision. *Id.* at 38-41. It is a short analytic step to apply the *Giggey* analysis of the Massachusetts burglary statute to the Massachusetts assault and battery statute.

From the Court's perspective, the *Taylor/Shepard* line of cases, which had been made applicable to an analogous Massachusetts criminal statute, presented an obvious argument that should have been raised at Mr. Damon's sentencing. As the First Circuit recently wrote, "[a]llowing the defendant to raise a new argument in a habeas petition when he could (and should) have raised it either at his original sentencing or on direct review or both would undermine the prudential goals of the law of the case doctrine." *United States v. Matthews*, 643 F.3d 9, 15 (1st Cir. 2011). The Court concludes that Mr. Damon's *Johnson* claim is procedurally defaulted.

### E. "Actual Innocence" and Procedural Default

Even if he could have and should have raised the *Johnson* issue at sentencing or direct appeal, the law's bar bends if Mr. Damon demonstrates "a constitutional violation [that] has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In his motion, Mr. Damon asserts that the Court should allow the § 2255 petition because he is "actually innocent" of the sentence enhancement that was imposed. *Def.'s Mem.* at 9. In support, he cites a Fourth Circuit case, *United States v. Maybeck*, 23 F.3d 888 (4th Cir. 1993), in which the appellate court held:

> Except for the obvious difference in the severity of the sentences, we see little difference between holding that a defendant can be innocent of the acts required to enhance a sentence in a death case and applying a parallel rationale in non-capital cases. . . . a defendant in either a capital or noncapital case would, unless excepted from the cause and prejudice requirement suffer the same general consequence (an enhanced sentence) from being held responsible for an act of which he or she is actually innocent.

*Id.* at 893.

Despite *Maybeck*, it is by no means clear that the actual innocence of a sentence enhancement applies to a non-capital case. The First Circuit has not spoken on this issue and other circuits are split. *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 171 (2d Cir. 2000) (holding that the actual innocence applies to a sentencing enhancement in a non-capital sentence); *Embrey v. Hershberger*, 131 F.3d 739, 740 (8th Cir. 1997) (en banc) (concluding that the actual innocence sentencing exception applies "only to the sentencing phase of death cases"); *United States v. Richards*, 5 F.3d 1369, 1371 (10th Cir. 1993) ("A person cannot be actually innocent of a noncapital sentence . . . .").

To resolve this issue, the Court need not decide whether the actual innocence exception applies to generic non-capital sentences. As the Eleventh Circuit pointed out in *McKay v. United States*, 657 F.3d 1190 (11th Cir. 2011), for this purpose the Supreme Court defines the term "'actual innocence'" as "'factual innocence, not mere legal insufficiency.'" *Id.* at 1197 (quoting *Bousley*, 523 U.S. at 623). "[F]or the actual innocence exception to apply in the noncapital sentencing context, a movant must show that he is factually innocent of the conduct or the underlying crime that serves as the predicate for the enhanced sentence." *Id.* at 1198-99.

Here, Mr. Damon makes no claim that he is factually innocent of the underlying crime of assault and battery. *See Def.'s Mem.* at 7. According to the PSR, he pleaded guilty to the charge on January 12, 2006 and there is no suggestion he was not validly convicted. *PSR* ¶ 30. Instead, he maintains that even though he assaulted his mother, this Court should not have considered this conviction as a

career offender predicate because he could have perpetrated only an "offensive touching[]," not a "harmful battery." *See Holloway*, 630 F.3d at 260; *Def.'s Mem.* at 5-7.

To sustain an "actual innocence" claim in a capital context, however, a petitioner "must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found [him] eligible for the death penalty." *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992).   The Court assumes that, if it applies at all, the standard for an actual innocence claim in a non-capital sentencing enhancement would be no stricter than for a capital enhancement.   Here, Mr. Damon's contention that he is actually innocent of an assault and battery that would qualify as a career offender predicate is solely based on an asserted legal insufficiency, not on actual factual innocence of the enhancement.   *Def.'s Mem.* at 7 ("Here, the challenge Mr. Damon makes is not to the specific facts of his prior conviction, which cannot be taken into account in determining whether his prior conviction qualifies as an enhancing predicate.   Rather it is an entire *category* of defendants that the First Circuit has declared to not fall within the range of those considered to be crimes of violence") (emphasis in Defendant's  memorandum).

In other words, on collateral review, a defendant—like Mr. Damon—who wishes to challenge a sentencing enhancement as a miscarriage of justice must do more than simply put the Government to its proof.   In *Bousley*, the United States Supreme Court noted that in this context "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 624; *Gaskins v. Duval*,

640 F.3d 443, 444 (1st Cir. 2011). As the Eleventh Circuit pointed out, even in the Second and Fourth Circuits, a "claim of mere legal innocence of a sentence would not win the day in either of those circuits." *McKay*, 657 F.3d at 1199.

Here, Mr. Damon concedes that he "finds himself in the unenviable position of having denied that he used violence in the commission of the prior A&B conviction in Massachusetts." *Def.'s Objection* at 4. He never says that he did not grab his mother by the throat and push her against the wall, which is what the PSR says he did. *PSR* ¶ 30. In fact, the police report expands the description of Mr. Damon's actions, revealing that his mother told the police that after getting in a verbal argument with her, Mr. Damon became physically violent, grabbed her by the throat, pushed her up against a wall, continually pushed her, while screaming at her that he was "untouchable." *Gov't's Mot.* Attach. 1 at 3 (Brockton Police Dep't Report Dec. 8, 2005). The police officer observed Mr. Damon's mother's neck to be red and discolored and he requested an arrest warrant issued for Mr. Damon. *Id.*

Mr. Damon is not so unwise as to represent to the Court that he did not do what is stated in the police report. Instead, he asserts that whether he actually did so does not matter. *Def.'s Objs.* at 4-5. In the context of a § 2255 challenge to a sentencing enhancement, however, it does matter. As the Eleventh Circuit observed in *McKay*, "[n]o circuit court has held that the actual innocence exception is available for claims of purely legal innocence." *McKay*, 657 F.3d at 1999.

If actual innocence applies to his non-capital sentencing enhancement, the Court concludes that Mr. Damon has not demonstrated that he is actually innocent

of the sentencing enhancement under United States Sentencing Guideline §
2K2.1(a)(2).

## F. Complete Miscarriage of Justice

To prevail on the § 2255 petition, Mr. Damon must demonstrate that his
sentence "'(1) was imposed in violation of the Constitution, or (2) was imposed by a
court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was
otherwise subject to collateral attack.'" *Moreno-Morales v. United States*, 334 F.3d
140, 148 (1st Cir. 2003) (quoting *David v. United States*, 134 F.3d 470, 474 (1st Cir.
1998)). As Mr. Damon does not argue that this Court lacked jurisdiction or that his
sentence exceeded a statutory maximum, he is left with a claim that his sentence is
unconstitutional or is "otherwise subject to collateral attack." *See id*. Mr. Damon's
constitutional and collateral attack arguments are two sides of the same coin: that
he is actually innocent of the sentencing enhancement. *See Def.'s Opp'n* at 4-8.

The constitutional attack is self-explanatory. Turning to the "otherwise
subject" standard, under *Hill v. United States*, 368 U.S. 424 (1962), to prevail on his
demand for collateral review, Mr. Damon must demonstrate "a fundamental defect
which inherently results in a complete miscarriage of justice" or "an omission
inconsistent with the rudimentary demands of fair procedure." *Id*. at 428; *Knight v.
United States*, 37 F.3d 769, 772 (1st Cir. 1994). As the First Circuit has stressed, to
meet this standard, the petitioner must not only establish error but also the error
must "'present exceptional circumstances where the need for the remedy afforded by
the writ of *habeas corpus* is apparent'" and "[e]rrors warranting a reversal on direct

appeal will not necessarily support a collateral attack." *Knight*, 37 F.3d at 772 (quoting *Bowen v. Johnston*, 306 U.S. 19, 27 (1939)).

Turning to Mr. Damon's argument, citing *Holloway*, he contends that the Government is unable to demonstrate, using a categorical approach, that the January 12, 2006 Massachusetts conviction for assault and battery is a crime of violence under United States Sentencing Guideline § 2K2.1(a)(2). In *Holloway*, even after *Johnson*, the First Circuit did not reverse the district court sentence; rather, it vacated the sentence and remanded to the sentencing court for resentencing. *Holloway*, 630 F.3d at 262. Noting that the Government had not presented *Shepard* evidence at the original sentencing, the First Circuit acceded to the Government's request that it be allowed to present such evidence at a resentencing.[4] *Id.* In this case, the Government has not suggested that if a resentencing were held, it could produce *Shepard* documents that would clarify whether Mr. Damon's assault and battery was harmful as opposed to reckless or offensive or would fit within the residual clause. *See Giggey*, 551 F.3d at 40-41 (applying the categorical approach to U.S.S.G. § 4B1.2(a)'s residual clause). In fact, the Government attached to its memorandum a sealed exhibit consisting of the Brockton Police Department report of the incident, an exhibit that would not meet *Shepard* standards. *Gov't Mem.* Attach. 1.

---

[4]    In *Giggey*, quoting *Shepard*, the First Circuit described the permissible documents under *Shepard*: "For guilty pleas, the federal sentencing court may review the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.'" *Giggey*, 551 F.3d at 40 n.8 (quoting *Shepard*, 544 U.S. at 16). Mr. Damon was charged and pleaded guilty to assault and battery in the busy state district court in Brockton, Massachusetts. *PSR* ¶ 30. It would be surprising if any of the *Shepard*-sanctioned documents existed for this criminal case and, as the Court has noted, the Government has not suggested they do.

Even if the Government could not establish that Mr. Damon's assault and battery was a crime of violence for purposes of United States Sentencing Guideline § 2K2.1(a) and § 4B1.2, the next question is whether this error resulted in a "complete miscarriage of justice." In *Narvaez*, the Seventh Circuit readily concluded that a misapplication of the career offender guideline which resulted in a Guideline range of 151 to 188 months as opposed to 100 to 125 months and a sentence of 170 months constituted a "complete miscarriage of justice." *Narvaez*, 674 F.3d at 624, 628-29. The Seventh Circuit observed:

> The imposition of the career offender status branded Mr. Narvaez as a malefactor deserving of far greater punishment than that usually meted out for an otherwise similarly situated individual who had committed the same offense. It created a legal presumption that he was to be treated differently from other offenders because he belonged in a special category reserved for the violent and incorrigible.

*Id.* at 629. Similarly, in *Torres-Rosario*, the First Circuit determined that it would be a miscarriage of justice on direct appeal to uphold the defendant's 240-month sentence and ACCA designation post-*Holloway* because *Holloway* would likely result in a lower sentence of 110-137 months. 658 F.3d at 116, 116 n.3.

The issue is much closer here. Categorizing the January 12, 2006 conviction as a crime of violence did not result in Mr. Damon's categorization as a career criminal. It did result in an enhanced sentencing range of seventy to eighty-seven months as opposed to forty-six to fifty-seven months. Once that Guideline range was established, the Court treated the range as advisory and sentenced Mr. Damon to seventy months in accordance with 18 U.S.C. § 3553(a) factors, among which are the history and characteristics of the defendant, the need to deter criminal conduct,

and to protect the public from future crimes of the defendant. 18 U.S.C. § 3553(a)(1), (2)(B)(C).

Significantly, if Mr. Damon were resentenced, the Court would apply the same analysis. Once the new Guideline range was established, the Court would start with the Guideline range and then turn to the § 3553(a) factors. During this phase of the sentencing hearing, the Government would not be restricted to *Shepard* documents to prove the facts underlying Mr. Damon's assault and battery conviction, and the police report would likely be admissible for this purpose. *See United States v. Figaro*, 935 F.2d 4, 8 (1st Cir. 1991) ("[u]nlike the strict evidentiary restrictions applicable at trial, the only evidentiary requirement at sentencing is that the sentence be based on information which has 'sufficient indicia of reliability to support its accuracy'") (quoting U.S.S.G. § 6A1.3); *see also United States v. Marsh*, 561 F.3d 81, 88-87 (1st Cir. 2009) (affirming the district court judge's reliance on police reports to establish the facts underlying the defendant's vacated resisting arrest convictions during its 18 U.S.C. § 3553(a)(2)(C) assessment). If so, the conduct underlying Mr. Damon's assault and battery, namely pushing his mother against a wall and choking her, would likely be before the Court for its § 3553(a) consideration.

To place this assault and battery into perspective for Mr. Damon, his January 12, 2006 conviction was the fourth conviction for assaulting his mother. On February 15, 2000, when he was fourteen, he pushed his mother against a wall and threw a hat in her face, resulting in a conviction on April 10, 2000. *PSR* ¶ 22.

On December 3, 2001, when he was fifteen, he committed two assaults against his mother, one in which he grabbed her by the shoulder and raised his hand to her and the other in which he pushed her. *PSR ¶¶* 27-28.

Mr. Damon's criminal history was not limited to periodic assaults against his mother. As a juvenile, he had been also adjudicated for another assault, a breaking and entering, a criminal threatening, and, as an adult, in addition to the January 12, 2006 assault and battery conviction, he had a conviction for possession with the intent to distribute marijuana. *PSR ¶¶* 23-25, 29. Only twenty-three years old, Mr. Damon had an unusual number of dismissed charges: eleven charges had been dismissed, including eight assault and batteries or criminal threatening. *PSR ¶¶* 34-43. One of those dismissed charges involved a criminal threatening of his mother. *PSR ¶* 38.

Furthermore, at the time of sentencing, Mr. Damon was subject to eight pending criminal charges in Massachusetts, including (1) distribution of crack cocaine, (2) drug violation near a school or park, (3) conspiracy to violate drug law, (4) trespassing, (5) assault and battery, (6) aggravated assault and battery, assault and battery with a dangerous weapon, and conspiracy, (7) assault and battery with a dangerous weapon, and (8) assault and battery. *PSR ¶¶* 46-53. The last charge also is alleged to have involved his mother as the victim; the PSR states that he punched his mother in her stomach, groin and head. *PSR ¶* 53.

If Mr. Damon's January 12, 2006 conviction had not placed him in base offense level twenty-four and, after upward and downward adjustments, a resulting

Guideline range of seventy to eighty-seven months, the Court may well have sua sponte considered whether his criminal history category of IV substantially underrepresented the seriousness of his criminal history and his likelihood of recidivism. *See* U.S.S.G. § 4A1.3(a)(1). An upward adjustment of only one criminal history category would have resulted in Mr. Damon's placement in a Guideline range of forty-one to seventy-one months and an adjustment of two criminal history categories a range of sixty-three to seventy-eight months. Unlike *Narvaez* and *Torres-Rosario*, where it was uncontested that the miscalculation substantially spiked the defendant's Guideline sentence, the Court's miscalculation of Mr. Damon's range had the counterintuitive effect of mollifying its serious concerns about his criminal history and in view of his Criminal History Category IV, the Court did not consider an upward adjustment of his criminal history.

Furthermore, there is no evidence that the Court sentenced Mr. Damon based on materially false or incorrect information as described in *Townsend*, *United States v. Gonzalez-Castillo*, and *United States v. Curran*. *Townsend*, 334 U.S. at 740-41 (reversing the district court's denial of a defendant's § 2255 petition because the court "sentenced [the defendant] on the basis of assumptions concerning his criminal record which were materially untrue"—namely three larceny and theft charges dismissed as against the defendant); *Gonzalez-Castillo*, 562 F.3d 80, 82-84 (1st Cir. 2009) (vacating a defendant's 71-month sentence at the top of the guideline range for violating 8 U.S.C. § 1326(a)(2) because the district court based the defendant's deterrent sentence on the "non-existent material fact" that he illegally

entered the United States two times in a two year period); *Curran,* 926 F.2d 59, 60-61, 64 (1st Cir. 1991) (vacating the defendant's sentence after learning that the sentencing judge imposed a higher sentence than recommended by the Government based upon letters from third parties, which were undisclosed to counsel until sentencing, urging him to impose a harsh sentence on the defendant).

Unlike *Townsend*, *Gonzalez-Castillo*, and *Curran*, Mr. Damon has provided no evidence that the description of the maternal assault in the PSR and police report is materially false or inaccurate. It is true that at the sentencing hearing, through counsel, he cryptically objected to the description of the 2005 assault and battery, not the fact of the conviction itself. *Sentencing Tr.* 16:17-25. As a consequence of his objection and without further proof at the sentencing hearing, the Court considered only the fact of conviction, not the circumstances underlying it. The Court therefore imposed a sentence at the bottom of the sentencing guideline range.

By contrast to a sentencing hearing, where the Government bears the burden to demonstrate the accuracy of contested matters, Mr. Damon's § 2255 petition places him in a different position. In this proceeding, Mr. Damon has not illuminated the Court as to what is inaccurate about the police report's description of the 2005 maternal assault. If Mr. Damon presented the Court with his affidavit containing a different version of the assault and battery, sworn statements of witnesses disputing the PSR's version, or other evidence that the description is false, it would be another matter. But there is no suggestion in Mr. Damon's

pending petition that the actual facts underlying the 2005 maternal assault are false, only that he has a legal defense to how the conviction should be considered for guideline purposes. Moreover, even if the Court were to assume that the facts underlying the 2005 maternal assault are inaccurate, the fact remains that Mr. Damon at age twenty was convicted of assaulting and battering his own mother, his third such juvenile or adult conviction for doing so.

The Court cannot know what sentence it would impose if Mr. Damon were to reappear for resentencing. In the unusual circumstances of this case, Mr. Damon's criminal history confirmed an unusual streak of violent criminality, including multiple assaults against his mother, and the Court concludes that a sentence of seventy months, even though based on a miscalculation of the Guidelines, does not amount to a complete miscarriage of justice.

## IV.    SUMMARY

The Court reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record, and has made a *de novo* determination of all matters adjudicated therein. In that regard, the Court concurs with the recommendations of the Magistrate Judge in her Recommended Decision and for the additional reasons herein, the Court determines that no additional proceeding is necessary. In sum, the Court concludes that Mr. Damon is procedurally defaulted from asserting this claim because he could and should have raised it either before this Court or on direct appeal, that Mr. Damon has failed to demonstrate that he is actually innocent of having previously committed a crime of violence under U.S.S.G.

§ 2K2.1(a)(2), and that his sentence of seventy months does not represent a complete miscarriage of justice.

## V.     CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(1)(B), the Court of Appeals may review a final order in a proceeding under § 2255 if a circuit justice or judge issues a certificate of appealability (COA). *See* 28 U.S.C. § 2253(c). "To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right . . ." *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). The petitioner's burden to demonstrate suitability for a certificate depends on whether the district court dismissed the petitioner's § 2255 claim on the merits or procedural grounds. *Id.* at 484.

First, where a district court has rejected a petitioner's constitutional claim on the merits, a certificate should only be issued if the petitioner can "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.; see Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). If, on the other hand, the Court denies a defendant's § 2255 petition on procedural grounds, a certificate should be issued as long as the petitioner shows "(1) the soundness of the procedural ruling is debatable, and (2) the constitutional claim is also colorable." *Mateo v. United States*, 310 F.3d 39, 40 (1st Cir. 2002); see *Slack*, 529 U.S. at 484. The *Slack* Court observed that "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district

court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack,* 529 U.S. at 484.

Here, a "plain" procedural bar is not present. Instead, in this Court's view, Mr. Damon has raised five issues that merit consideration by the First Circuit: (1) whether Mr. Damon's claims are procedurally defaulted; (2) whether *Johnson* applies retroactively; (3) whether a guideline miscalculation that results in a sentence within the proper statutory range satisfies the complete miscarriage of justice standard; (4) whether a claim of actual innocence may be based on a legal as opposed the factual error; and (5) whether in the circumstances of this case a seventy-month sentence represents a complete miscarriage of justice. Under *Mateo*'s two-factor test, (1) reasonable jurists could debate the Court's procedural rulings in this case and (2) reasonable jurists could decide that issues (1)-(5) present colorable constitutional claims given that the outcome of these issues implicates due process concerns. *See* 310 F.3d at 40. Like the district court judge in *United States v. Narvaez*, Nos. 09-cv-222-bbc, 03-cr-81-jcs, 2009 U.S. Dist. LEXIS 67189 (W.D. Wis. July 31, 2009), although the Court believes it is "proper to deny [Mr. Damon's] § 2255 motion, [it] cannot say that a reasonable judge would not make a different decision." *Id.* at *3. The Court grants Mr. Damon's certificate of appealability.

## VI.    CONCLUSION

1.    It is therefore ORDERED that the Recommended Decision of the Magistrate Judge (ECF No. 332) be and hereby is  AFFIRMED.

2.    It is further ORDERED that James Damon's Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 289) be and hereby is DENIED.

3.    It is further ORDERED that James Damon's Motion for Certificate of Appealability be and hereby is GRANTED.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of December, 2012